And we'll proceed to the next case on the oral argument calendar, which is Aguilar v. Walgreen. Aguilar v. Walgreen May proceed. Good morning. This is a First Amendment. Do you wish to state your name? Yes, I'm sorry. Ray Gallo on behalf of Aguilar et al. Appeal. This is a First Amendment and due process case. It's about when it's appropriate for the district court in seeking to ensure integrity and orderly It's a unique case because it's the only one we find where a district court has ordered corrective notice concerning communications made solely to clients who retained counsel, sought that counsel's advice, and where the communication was that advice. Before we get into the merits of your claim, could you address the point as to whether this court has jurisdiction under the collateral order doctrine to entertain your merits arguments? Yes. As I understand it, the order from Judge Morrison England in the district court in Sacramento did not end the class action but provided for a new opt-out period with a new notification because what he found to be misleading notifications earlier made by your office. What issue is determinant of this litigation so to allow the collateral order jurisdiction to obtain? It's determinative of the effective rights. Not the effective rights, the legal rights. Let's talk about what issue do you bring forward in this case which determines the case below? This case below is over in terms of my client's right to not participate in it if their opt-outs are stricken. Even if there's a new opt-out period? To the extent that this corrective notice, for a variety of reasons I've argued and you understand I think are grossly inaccurate, undermines my relationship and my co-counsel's relationship with our clients by suggesting that we had a financial interest that was not disclosed, which doesn't make any sense. It arises only from documents our clients signed, the extent to which they are misled purportedly when in fact none of those arguments hold any water to the extent that there's a purported conflict of interest, which doesn't make any sense and if it existed doesn't concern these clients. Let me ask you this question. Have you cited any cases holding a corrective order regarding opt-outs that provides for a new opt-out period or new corrected notice that was challenged prior to judgment in the class action case? All the cases that you cited are challenges after action. Are there any challenges to pre-judgment orders? No. Okay, I didn't think so. And that's why we've also argued that mandamus is appropriate for a variety of reasons we've laid out. But the mandamus standard is a lot higher than the collateral order appeal. It is, but I want to suggest that this is a particularly important case. There is no case where this has happened, and if this can happen, particularly in a situation where the court really doesn't begin to have the information to know what constitutes good legal advice, then class members will never get it. It's extremely rare for class members, as here, to already have retained lawyers at the time they need to make the decision whether to opt out. Class counsel may have a ton of information, but it rarely gets to class members. Defense counsel may have a ton of information, but it rarely gets to class members. In the class action settlement context, judges only get what essentially plaintiff's lawyers are willing to share to the extent to which they're willing to denigrate their case to explain the reasons for the discount. Now here, plaintiff's counsel was really not willing to denigrate their case and explain the discount at all, and that's why the record doesn't show any basis for a discount. Now what we did is we happened to, in this particular case, have a ton of information. We not only have information from all of our clients, intensive information from a subset of our clients, we also have information from district managers, the supervisors of these people. We know what the facts are apparently better than anybody else here, and based on that, what we did is we advised our clients. Now advice is never neutral. It shouldn't be neutral unless it's a toss-up as to which option to decide. If you're advising a client between A and B and it doesn't really make any difference, you say, hey, here's some reasons on both sides that doesn't really make any difference. But if there's a clear, better answer for your client, it's your job to explain that. Early in my career, I once provided neutral advice, objective advice to a client, and you know what I got? Stiffed because it went badly. I provided a risk-discounter probable outcome analysis and a spreadsheet to a sophisticated business client. They didn't take my advice. It didn't go so well. And later they said, you should have insisted. And after that, I understood it was my obligation to advise my clients, to tell them what to do. So you're advising your clients now and they can opt out, correct? Correct, Your Honor. But if the judge calls me a conflicted, financially interested person based on—I mean, it doesn't say what— who misled them in some undefined way, which—none of which is true. Weren't you conflicted by representing Objector Vasquez? I'm sorry? Weren't you conflicted by representing Objector Vasquez who objected to the class action? Well, I disagree with that for a variety of reasons that you know from the papers. In my opinion, there is no conflict. The idea that—and there's case support for that, Your Honor. You've seen it. There's case support for the idea that it doesn't really make sense to say that class members support the settlement, think it's fair just because they haven't opted out, right? That's not a justifiable inference. The truth is, of course, class members would like the settlement to be increased, particularly here where—I mean, these people probably don't know, most of them, what the potential value of their claims is. Our clients do because they receive that information from us. But there may be some of the clients who haven't opted out because of timing considerations that they want a settlement rather than wait for years for a judgment. And your Objector, who is Mr. Vasquez, is saying the settlement should not be approved. So his position is contrary to those members of the class who want to accept the settlement, and you're representing both of them. That's not a conflict? You're making an assumption that they've made that determination. Now, the evidence we have is that nobody has that, and the evidence in the record is that nobody has that position. But isn't it totally possible that there is that position and therefore you shouldn't be representing both sides? Well, it's possible, but it seems counterfactual, Your Honor, on the record, right? There's nothing in the record. I mean, I'm looking at a letter in the excerpts of record  What we said was it's possible for a court to look at that Moreno case and decide there's a conflict here. Do I think that means there's a conflict here? Absolutely not. But most importantly, if there is a conflict, it doesn't concern the opt-outs in any way. They are not in any way adverse to the Objector. If the Objector is correct, there's no settlement, and the people in the class don't get any money. The opt-outs don't get any money no matter what. Right. The opt-outs agreed with the Objector. The settlement was not sufficient and chose to opt-out. There's no conflict in our concurrent representation, when it existed, of an Objector and the class members. Again, the timing matters as well, right? The class wasn't constituted until after these statements were made. But the most important thing is this is our legal advice to our clients who engaged us and asked us for it. Now, there's no factual basis, no legal basis, in the record, for believing our advice was anything other than exactly correct. None. And that's because we took it seriously. The record shows we discriminated. We talked to our clients. There were some who chose to stay in the class. There are a variety of reasons you might infer for that. Obviously, I'm also limited by the attorney-client privilege here. But this was not indiscriminate advice, and it was good advice. I can tell you that as I stand here, and the record shows it. Do you want to reserve? I'll reserve the remainder. Thank you. Good morning. May it please the Court. Jean-Claude Andre on behalf of Walgreens. I was planning all along on starting out this morning, Judge Bea, where you started, which is that there's no appellate jurisdiction, in our view, over this case. Judge Bea, you're absolutely correct that there's not a single published decision that recognizes that a Rule 23d management order is appealable under the collateral order doctrine. Mr. Gallo hasn't cited one in his reply brief. There are three published circuit decisions out of circuit, admittedly a little bit dated, that find that there is no such jurisdiction. On top of that, this Court has twice found, and again admittedly in unpublished decisions, that there is no collateral order jurisdiction over 23d orders, and that as a result of that, because, Judge Thomas, as you noted, the mandamus standard is more demanding, and such management issues are insufficiently important and can be addressed at the end of the case, that there's no good reason for exercising mandamus jurisdiction either. So, in the circumstances of this case, this would be the first case, if we held, that there's no appellate jurisdiction for this circuit? It would be this circuit's first published opinion, yes. In 23d management order cases? Correct, correct. I would say, to the extent that we want to start parsing things finally, just for full disclosure, there is the Supreme Court's Eisen decision, which this Court applied in Hunt. And Hunt, I guess, would fall within the broader 23d rubric, but I think the way to kind of reconcile all these cases is that Hunt expressly said, Judge Gould writing for the Court said, we don't see this case being any different from Eisen. Eisen found collateral order jurisdiction, and what was critical to both of those cases was that there was a monetary sanction imposed on the plaintiff. And so, we actually have that in this case, but Mr. Gallo hasn't challenged that, not in his opening brief, not in his reply brief, and not here at oral argument, so that issue is clearly waived, and therefore, in our view, this case falls squarely within the three out-of-circuit decisions as well as the two unpublished decisions from this Court. I guess the next thing I would like to address is Mr. Gallo said that, in this case, the plaintiffs, and I guess perhaps my client as well, were not willing to show why the dramatic discount, what he asserts is a dramatic discount, and that is simply false. In this case, the Caves plaintiffs submitted a document that explained how the valuation for these cases, and to be clear, these cases are effectively post-Vinoli, post-Wells Fargo, nuisance class actions. I mean, that's just what they are. They're not going to be certified. We provided the District Court, and it's in the record here, with 17 examples of where classes like this will not be certified because of lack of commonality, lack of predominance, because it's so hard to determine exempt status as to a particular employee. Given that these cases typically are not certified for class treatment, that drops the settlement value way down. But a defendant like us, when you're facing 919 class members, you have to pay the plaintiffs' counsel something. And so the nuisance value that Caves counsel presented to the District Court, again, it's in the record, shows that the settlement value per claimant similarly situated could be as low as $700, could be as much as $4,700, and here the payment is over $6,000. And it's because we want to be done with this, but it is still a nuisance payment. And all of those cards were shown, shown in public filings, shown to Mr. Gallo, shown to District Court, and before this Court. And to that extent, there is simply no merit whatsoever to his assertion that he did not know why there was such an allegedly large discount given. As to his valuation, what he has said now, not earlier, is that, oh, you know, we did our own independent calculations as to the value of these individual claims. To be sure, when someone brings their own individual claim, takes it to trial, they may get a big recovery. But he did not do his own individual calculation. What he actually told the store managers here in one of his newsletters was that Walgreens has said in federal court to a federal judge that your claim is worth $200,000. In that, he was pointing to our removal papers in Aguilar. In those papers, we have brackets where we took the allegations of the plaintiffs and basically tried to estimate what their claims would be if they were successful across the board, plaintiff by plaintiff. And if you look at that document, there's dozens and dozens of these boxes. He then took those, those numbers, and that box, and reproduced it for Vasquez, the objector. That's what he submitted in further excerpts of record, page 4 and 5. It's the same thing. It's not an independent calculation based on conversations with clients, at least as far as the record is concerned. It's based on what we said in our removal papers, and we are entitled in our removal papers to assume 100% violation, 100% valuation, so as to exceed the $75,000 threshold per potential plaintiff. That's what we did. That's all he had. And for him now to say that it's based on some independent calculation beyond our removal papers is, again, just not supported by the record. To the extent that Mr. Galilasa says that his advice is correct, I presume what he's talking about is the advice about valuation. That's the same point that I was just trying to explain here. He may have a view of what these cases are worth, but at least as far as what the record shows, the only thing that the record shows is what CAVES provided to the district court saying these cases are worth between $700 and maybe $4,700, that we're nonetheless willing to pay over $6,000, and that only for removal purposes did we put a number much higher, and that we actually disagree with that number, but it's based on the right that we have to assert that number for removal purposes and removal purposes only. I know there's a lot of time left. If the panel has no further questions, I'm happy to give my time back to the court. I think we have your argument in hand. Thank you. Thank you, Your Honor. Thank you. Walgreens Council has told the clear truth here, which is that the reason for the discount is classification risk. They think there's no chance the class will be certified. What does that mean? It means that people who have valuable individual claims in this class are settling them for nothing only because a class can't be certified. Is that in their best interest? Are these people being protected? Should that case even have been provisionally certified for settlement purposes? The answer is no. If these people were given the accurate information that they have valuable claims, but participating in a class action means a 97 percent discount because a class can't be certified, that would be an important piece of information for them, don't you think? But that's not in the notice, and it's not reaching them anywhere except through us, their lawyers, for those who engage lawyers. Defense counsel argues that the only evidence in the record is theirs about value. That's not true. Our declarations in responding to this ex parte, which gave us effectively after, I think it was the Thanksgiving holiday, two days to respond, made clear that we had done the math based on our own data developed from scores of clients. That's the true value of these individuals' claims. Every effort to prevent us from giving our clients the advice we believe is appropriate in the manner we believe is appropriate, so that they will hear it or read it and hopefully understand it, gets in the way of these people actually understanding the fair value of their claims and making a decision that's based on their own best interests. Can't they simply opt out and then hire you for the individual claims? They can, but why are they opting out? They need a reason. They need to understand that they should. How are they going to get that information? From a neutral notice? A neutral notice says, oh, this and that. That doesn't work. These people are incredibly busy. Why did we send this letter? You would rather have a notice with a court name and the judge's name as your notice, right? Well, let's talk about that. Why did I do that? That's a question in your minds, right? I was trying to get them to read it. And do you think perhaps I deceived them into reading it? Okay. But once they did read it, what did they see, Your Honor? That is what Judge England, as I understand it, found to be deceptive. It's not clear what he found. He didn't do any findings of fact in any detail at all, as you know. And there's the Gulf Oil argument, which, of course, is not the basis upon which I hope you decide this. I hope you decide this case on the basis that if these people can't get our advice in the manner we thought we needed to deliver it to them so that they would hear it and understand it, then class members never will have the advice of attorneys in exercising their right to opt out. How will they get that? By getting an attorney. But these people did get an attorney. Well, I'm just saying. Look, right now, do you agree that you have remedies at the end of this litigation? Not effectively. If these people don't opt out, they're effectively firing us, and they're done. And they did it because they were provided with inaccurate information, maligning their lawyers with no good reason, calling something misleading that in context was not. And we talk about devaluation. We said potential valuation, and we said we have our valuation, and Walgreen's removal papers tends to confirm our valuation. If you read the notice, it doesn't say settlement value. It says potential value, and we talk about verdict value. The bottom line is he says even nuisance value in an individual case is more than these people are getting in this class case. Opting out is a no-brainer if you have a lawyer. That's a fact. Every lawyer knows that, and these people have valuable claims, some of them very valuable claims. And some of them, if this goes through, will fail to opt out because the court has undermined their relationship with their lawyers. And lastly, I think it's important to understand both on the jurisdictional question and this one. These people, I mean, how am I supposed to advise them? What the court has effectively said is if I give them my actual advice, it's improper. Now, I can do it orally and hope it doesn't come to the court's attention, but what am I doing? Am I skirting a court order? None of that feels appropriate or comfortable. I should be able to advise my clients, and they should be able to hear that advice without that kind of commentary. Otherwise, the right to opt out doesn't mean anything. Thank you, counsel. The case should start to be submitted for decision and will be in recess for the morning. Thank you.
judges: THOMAS, BEA, THOMAS